UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RCA TRADEMARK MANAGEMENT S.A.S., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:14-cv-00088-TWP-TAB<br>) |
| VOXX INTERNATIONAL CORP., formerly known as AUDIOVOX CORP., VOXX ACCESSORIES CORP formerly known as AUDIOVOX ACCESSORIES CORP, and ALVOX TRADEMARK HOLDING COMPANY, LLC, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**ENTRY ON MOTION TO TRANSFER VENUE**

This matter is before this Court on Defendant Voxx International Corporation's ("Voxx") Motion to Transfer Venue ([Filing No. 22](#)) seeking to transfer this case to the Eastern District of New York, to which Plaintiff RCA Trademark Management S.A.S. ("RCA") objects. A hearing on the motion was held on July 17, 2014. RCA appeared by counsel Paul A. Wolfa and Donald Eugene Morgan. Voxx appeared by counsel Michael S. Elkin, Sally F. Zweig, and B.J. Brinkerhoff, as well as Robert Levy, General Counsel for Voxx. The court reporter was David Moxley. For the reasons set forth below, Voxx's Motion is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

RCA is a *société par actions simplifée*[1] organized under the laws of France with its principal office in Boulogne-Billancourt, France. RCA is a wholly owned subsidiary of Techicolor S.A. ("Technicolor"), a publically traded *société anonyme*[2] organized under the laws of France. Voxx is a Delaware corporation headquartered in Hauppage, New York, which is located in the Eastern District of New York.

Voxx and RCA negotiated and entered into a series of agreements whereby Voxx acquired Technicolor's accessories and audio-visual businesses, and several RCA trademarks were transferred to Voxx. The agreements were negotiated from spring 2006 through the end of December 2007, primarily in New York City at the law offices of Morrison & Foerster, LLP. New York City is located in the Southern District of New York. Voxx's negotiation team consisted primarily of executives based at Voxx's Hauppage, New York headquarters, including Director, President and CEO Patrick Lavelle, Senior VP and CFO C. Michael Stoehr, and General Counsel Robert Levy. RCA was represented by California-based attorneys, Walter Conroy and Brandon Villery of Morrison & Foerster, LLP; California-based Technicolor executives, including Senior VP and General Counsel Steven Glick; head of Strategy and Acquisitions Robert Heath; and Director of Strategy and Acquisitions Jim Mahern; as well as France-based RCA executives.

The agreements that are the subject of this litigation include 1) the Accessory Purchase Agreement (Filing No. 24-1); 2) the Accessory Trademark Assignment Agreement (Filing No. 24-2); 3) the Trademark Coexistence Agreement (Filing No. 24-3); 4) the AV Purchase

---

[1] A French *société par actions simplifée* is a simplified joint stock company most closely resembling an American limited liability company (Filing No. 1-1).

[2] A publically traded French *société anonyme* closely resembles a publically traded American corporation. (Filing No. 1-1).

Agreement (Filing No. 24-4); 5) the AV Trademark Assignment Agreement (Filing No. 24-5, Filing No. 24-6, Filing No. 24-7); and 6) The Amended and Restated Trademark Coexistence Agreement (Filing No. 24-8). The Accessory Purchase Agreement is the primary agreement, and refers to the RCA Trademark Assignment and the Trademark Coexistence Agreements as "Ancillary Agreements" to the document. (Filing No. 24-1, at ECF p. 67). Sections 9.2 and 9.3 of the Accessory Purchase Agreement address the governing law and jurisdiction, and dispute resolution, respectively. (Filing No. 24-1, at ECF p. 61). The AV Trademark Assignment Agreement, the Accessory Trademark Assignment Agreement, and the Trademark Coexistence Agreement all incorporate Sections 9.2 and 9.3 of the Accessory Purchase Agreement by reference. The AV Purchase Agreement contains nearly identical provisions for governing law, jurisdiction, and dispute resolution in its Sections 9.2 and 9.3.

Section 9.2 of the Agreements provides that "This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York." (Filing No. 24-1, at ECF p. 61; Filing No. 24-4, at ECF p. 56). Section 9.3 sets forth the procedures for dispute resolution, and defines a "Dispute" as "the breach or alleged breach [of the Agreement or any Ancillary Agreement] which does not involve claims by or against third parties." (Filing No. 24-1, at ECF p. 61). The claims in this case fall under this definition because they are between the parties to the Agreements and do not involve any outside third parties. Section 9.3 requires that Disputes first be attempted to be resolved through non-binding mediation, but the parties are not required to participate in mediation for more than 30 days. Although the contracts also provide for arbitration as a means of resolving disputes, RCA waived this provision by filing its claims in federal court. The Agreements also state that the parties may seek interim or provisional relief any time prior to or during mediation or arbitration, and that such relief must be brought in the

3

courts located in New York County, New York. The provision further states that "[e]ach party irrevocably submits to the exclusive jurisdiction of such court in any proceeding and waives any objection it may now or hereafter have to venue or to convenience of forum." ([Filing No. 24-1, at ECF p. 61](#)). The arbitration provision of this section provides that arbitration shall be governed by New York law. Importantly, the Agreements fail to address the dispute resolution procedures for Disputes that are not resolved during mediation, and do not explicitly state the venue in which non-interim relief must be sought.

Voxx asks that this case be transferred to the Eastern District of New York, as this is the district in which its headquarters are located. RCA argues that jurisdiction should remain in the Southern District of Indiana and that, if transfer were proper, the case should be transferred to the Southern District of New York where the majority of the negotiations occurred. In addition, New York County, the county specified in the Agreements as being the choice venue for resolving interim disputes, is located in the Southern District of New York. In light of RCA's argument, Voxx has expressed that it does not oppose transfer to the Southern District of New York, but still believes transfer to the Eastern District is also proper. ([Filing No. 55, at ECF p. 5](#)).

## II. LEGAL STANDARD

Section 1404 of United States Code Title 28 states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any other district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)

(internal quotations omitted).  A transfer of venue based on 28 U.S.C. § 1404(a) requires an "individualized, case-by-case consideration of convenience and fairness. . . ." *Id.* at 622.  A transfer of venue is appropriate if "(1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." *State Farm Mut. Auto. Ins. Co. v. Estate of Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996) (citations omitted).  District courts have broad discretion to grant or deny a motion to transfer under § 1404(a), and will not be reversed absent a clear abuse of discretion. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

### III.  DISCUSSION

RCA does not argue that venue would not be proper in the Eastern District of New York; rather, the dispute is whether the transfer would serve the convenience of the parties and witnesses, and would be in the interest of justice.  RCA argues that there is a forum selection clause in the Agreements that dictates that the proper forum is in New York, but there is some ambiguity as to whether this clause applies to the present Dispute between the parties, or only to arbitration and actions for interim relief.  The Seventh Circuit has stated that "[d]espite the existence of a valid forum-selection clause, courts may still transfer a case under § 1404(a)." *Heller Fin., Inc.*, 883 F.2d at 1293.  A valid forum selection clause may only waive a party's right to assert its own inconvenience as a reason to transfer or not transfer a case, because only one of 1404(a)'s factors—the convenience of the parties—is within the parties' power to waive, and courts must still consider the interests of justice and the convenience of witnesses in determining whether transfer is warranted. *Id.*  Because it is unclear whether the forum selection

5

clause applies to Disputes of this nature, the Court will consider all of the factors under § 1404 in turn.

A.  Convenience of the Parties and Witnesses

Courts generally consider the availability of and access to witnesses, as well as each party's access to and distance from resources in each forum, in the decision whether to transfer a case to another venue. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). "Other related factors include the location of material events and the relative ease of access to sources of proof." *Id.* In analyzing the convenience factor, the plaintiff's choice of forum, particularly if it is its home forum, carries significant weight. *Schumacher v. Principal Life Ins. Co.*, 665 F. Supp. 2d 970, 977 (N.D. Ind. 2009). In this case, RCA's choice of forum is entitled to less deference because Indiana is not its home forum, and the other factors must be analyzed to determine whether the convenience factors favor transfer.

1.  Convenience of the parties

With respect the parties' relative access to and distance from each forum, it is important to note that neither party to the Agreements is located in Indiana. RCA is a French company, and Voxx is headquartered in New York. Both parties to the Agreements are located closer to the Southern and Eastern Districts of New York than they are to the Southern District of Indiana. RCA places heavy emphasis on the fact that the consumer electronics accessory business Voxx purchased through one of the agreements, now Voxx Accessories Corporation ("Voxx Accessories"), was located in Indianapolis, Indiana at the time of the transaction, and continues to operate out of Indianapolis as a Voxx subsidiary. However, Voxx Accessories was added as a defendant in May 2014 after this Motion to Transfer was filed; and it is not a party to the

Agreements at issue. Because the parties are located closer to the Eastern and Southern Districts of New York, this factor weighs in favor of transfer.

	2.	**Convenience of the witnesses**

The convenience of witnesses is one of the most important considerations in determining whether to transfer a case. *See Craik v. Boeing Co.*, No. 1:13-CV-00874, 2013 WL 8476166 (N.D. Ill. Aug. 15, 2013) ("Assessing the convenience of the witnesses between venues is the singular most important undertaking in many transfer analyses."). Voxx contends that all of its material witnesses are located in New York, as Voxx is headquartered in New York and all of its executives and attorneys with any material relationship to the dispute are located there. Voxx also argues that RCA's material witnesses are primarily in France and California, as the attorneys and executives involved in the contract negotiations were based out of California and RCA is headquartered in France. RCA does not dispute these facts, but instead discusses the fact that a direct flight from California to Indianapolis is shorter than one to New York, and that Indianapolis has "nice hotels with reasonable rates near the federal courthouse' and an "award-winning airport." ([Filing No. 40, at ECF p. 10](Filing No. 40, at ECF p. 10)). While these considerations are true, the Court must consider the convenience of all of the material witnesses, not just those located in California.

RCA also argues that Voxx disclosed up to eight potential witnesses in its Rule 26(a) disclosure that are located in Indiana, including the current President of Voxx Accessories, and a former employee of RCA who was involved with the deal team that negotiated the agreements at issue, thus justifying this district as a convenient forum for witnesses. Rule 26(a) requires a party to disclose any individual likely to have discoverable information, not just those witnesses that will most likely testify at trial, as failure to make a required disclosure under Rule 26(a)

could result in the exclusion of such evidence under Rule 37. While there may be a few potential witnesses located in Indiana, the vast majority of Voxx's disclosed witnesses—41 versus 8—are located outside of Indiana in New York, France, California, Hong Kong, and Argentina. ([Filing No. 58-1](#)). Thus, RCA likely overemphasizes the inclusion of these eight Indianapolis-based individuals in Voxx's Rule 26(a) disclosure, as at this stage of the proceedings, there is no guarantee that they will have discoverable information, let alone be material witnesses. Another significant fact weighing in favor of transfer for the convenience of witnesses is that the individuals listed in the notice provision of the Agreements are located in New York, France, and California, suggesting that the material witnesses are likely located in those places. Because the vast majority of material witnesses are not located in Indiana, rather they are in New York and various parts of the world, this factor weighs in favor of transferring the case to New York.

### 3. Location of Material Events and Evidence

In a breach of contract action, the location of business decisions causing the breach is material to the dispute. *Capstone Int'l, Inc. v. Univentures, Inc.*, No. 3:10-CV-416 JD, 2011 WL 4529380, at *3 (N.D. Ind. Aug. 4, 2011), *report and recommendation adopted in part*, No. 3:10-CV-416 JD, 2011 WL 4529372 (N.D. Ind. Sept. 28, 2011). Courts also consider where the business relationship began, where the contract was negotiated and executed, and where services were to be performed. *Id.*

Neither party disputes that the Agreements at issue were negotiated and executed in New York. RCA argues that the products that breach the agreements are in retail outlets across the country, so it is apparent that the services were performed nationwide or worldwide. Voxx claims that the business decisions giving rise to the disputes in this case occurred in New York and France, at the Voxx and RCA headquarters. The fact that the Agreements were all

negotiated and executed in New York, and that the business decisions were made primarily outside of Indiana, weighs in favor of finding that a more appropriate venue is in New York.

**B.      Interest of Justice**

"The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation, Inc.*, 626 F.3d at 978. For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Id.* (additional citations omitted).

**1.      Familiarity with relevant law**

The parties do not dispute that New York law applies in this case, as stated in the Agreements and in RCA's Complaint, but do dispute each court's relative familiarity with the relevant law. While this Court is capable of applying New York law, the District Courts in New York necessarily have more experience with New York contract law than a court sitting in Indiana. Thus, this factor weighs in favor of transfer.

**2.      Relationship of each venue to the controversy**

RCA argues that Indiana has a strong relationship to the RCA brand, making New York's relationship to the controversy less significant. However, the fact that the Agreements were negotiated and executed in New York, involve a New York based company, and apply New York law gives courts in New York a greater interest in resolving this controversy than a court sitting in Indiana. In addition, the parties specifically agreed that at least certain types of disputes arising under the Agreements would be resolved in New York, and several meetings to resolve such disputes have already occurred in New York. Because New York has a stronger

9

relationship to the controversy than Indiana, courts in New York would have more of an interest in resolving the matter than the courts in this district.

   3.   **Docket congestion**

As pointed out by RCA, the courts in this district carry higher caseloads and have longer times to disposition on average than the courts in the Eastern District of New York and the Southern District of New York. Last year, the median time to trial in the Eastern District of New York was 32 months and the median time for the Southern District of New York was 28.9 months, versus 35.8 months in the Southern District of Indiana.[3] While there is not a substantial disparity between the caseloads and time to trial between the Eastern District of New York and the Southern District of Indiana, the Southern District of New York carries a significantly lower case load than this district. Therefore, it appears that the parties would receive a speedier resolution of their case in the Southern District of New York than in either of the other two districts, and the difference is significant enough to weigh in favor of transfer.

While it is true that a party seeking transfer faces a somewhat steep hill to climb given the weight afforded a plaintiffs choice of forum, based upon consideration of the factors under § 1404, the Court finds that transfer is warranted in this case. Further, venue should be transferred to the Southern District of New York.

   **IV.   CONCLUSION**

For the reason set forth above, the Court finds that this case should be transferred to New York; however, considering the parties' arguments and Voxx's concession that the Southern District of New York would be an appropriate venue, the Court orders that this case be

---

[3] Statistics as of September 2013, National Judicial Caseload Profile (available at http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-september-2013.pdf)

transferred to the Southern District of New York. Therefore, the Court **GRANTS in part** and **DENIES in part** Voxx's Motion to Transfer Venue ([Filing No. 22](#)).

The Clerk is ordered to transfer this matter to the Southern District of New York.

**SO ORDERED.**

Date: 08/04/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Donald Eugene Morgan
FAEGRE BAKER DANIELS LLP - Indianapolis
donald.morgan@faegrebd.com

Paul A. Wolfla
FAEGRE BAKER DANIELS LLP - Indianapolis
paul.wolfla@faegrebd.com

Sally F. Zweig
KATZ & KORIN P.C.
szweig@katzkorin.com

William J. Brinkerhoff
KATZ & KORIN P.C.
BBrinkerhoff@katzkorin.com

Michael S. Elkin
WINSTON & STRAWN LLP
melkin@winston.com

Seth E. Spitzer
WINSTON & STRAWN LLP
sspitzer@winston.com